IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:04-CR-412 |
| | ) | |
| ANTJUANE GLENTO DILWORTH, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION, ORDER, & AMENDED JUDGMENT

Catherine C. Eagles, District Judge.

Antjuane Dilworth, a federal inmate serving sentences for possession of a firearm by a felon and possession of a firearm in furtherance of a drug trafficking crime, asks that his sentences be reduced to time served because of post-sentencing changes in the law and his risk of severe illness from the COVID-19 virus. Mr. Dilworth's motion presents a very difficult situation.

On the one hand, his criminal history and post-conviction disciplinary records are long. In addition to his underlying drug and firearms felonies, he has a felony conviction for child abuse and another previous felony for possession of a firearm as a felon. His disciplinary record while incarcerated shows many years of sanctions for insolence, spitting on staff, damaging property, and at least one assault. The sentencing judge also specifically considered the underlying issues related to Mr. Dilworth's career offender status that Mr. Dilworth raises today and determined that the sentencing factors did not support a downward departure.

On the other hand, Mr. Dilworth has already served a very long sentence based on a career offender enhancement that would not apply under current case law. He has one serious risk factor for complications from COVID-19 and another possible risk factor. Mr. Dilworth is only a couple of years away from release even without a sentence reduction, and it is highly likely he will be admitted into a well-established, long-term residential drug treatment program upon his release. He has not had a disciplinary infraction in almost 18 months since being prescribed mental health medication.

Upon consideration of all the evidence, his motion will be granted.

## Procedural History

On January 6, 2005, Mr. Dilworth pled guilty to one count of possession of a firearm by a felon and one count of possession of a firearm in furtherance of a drug trafficking crime. Minute Entry 1/06/2005; Doc. 13. Based on earlier North Carolina convictions for felony child abuse and breaking and entering, Mr. Dilworth qualified for career offender status under the sentencing guidelines and case law then in effect. Doc. 60 at ¶ 13; Doc. 24 at 2. As a result, his total offense level was 21 and his criminal history category was VI. Doc. 60 at ¶¶ 21, 36.[1] The career offender status increased his aggregate guideline range from 137–156 months to 262–327 months. *Id.* at ¶ 72; Doc. 61 at 1. The sentencing court imposed a sentence of 262 months, followed by three years of supervised release. Doc. 21. The United States Court of Appeals for the Fourth Circuit affirmed his convictions and sentences on appeal. Docs. 25–26.

---

[1] The Court adopted the presentence report without change. Doc. 61; Doc. 24 at 4.

Mr. Dilworth filed his compassionate release motion on August 28, 2020. Doc. 104. On October 29, 2020, the Court found that he exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A) and directed the government to respond to the substance of the defendant's motion. Doc. 114. Briefing is now complete.

## Facts

At age 20, Mr. Dilworth was charged with felony child abuse for hitting his infant daughter in the face, causing a skull fracture and bleeding to the brain. Doc. 60 at ¶ 27. Not long after, he was charged with breaking and entering and larceny, both felonies under North Carolina law, for breaking into a house in Winston Salem and stealing a lawn mower. *Id.* at ¶ 28. He pled guilty to all three charges, which were consolidated for judgment. *Id.* at ¶¶ 27–28. He served around 33 months in prison before release on supervision.[2] *Id.* at ¶ 27.

When he was 26, police responded to a call for assistance from Mr. Dilworth's girlfriend. *Id.* at ¶ 32. Upon arrival, the officers found Mr. Dilworth locked in an apartment with his girlfriend's five-year-old child. *Id.* After forcing entry into the apartment, the officers found a loaded firearm inside a bedroom closet. *Id.* Mr. Dilworth pled guilty to felony possession of a firearm by a felon and misdemeanor false

---

[2] The presentence report says the defendant was paroled but given the date of offense this is likely a mistake. Mr. Dilworth was more likely released on post-release supervision pursuant to the North Carolina Structured Sentencing Act effective for crimes committed after 1994. *See* N.C. Gen. Stat. § 15A-1340.10 *et seq.*; § 15A-1368 *et. seq.*; *see also State v. Stubbs*, 232 N.C. App. 274, 284, 754 S.E.2d 174, 181 (2014), *writ dismissed,* 368 N.C. 259, 771 S.E.2d 292 (2015), and *aff'd,* 368 N.C. 40, 770 S.E.2d 74 (2015).

3

imprisonment, which were again consolidated for judgment. *Id.* He served approximately 17 months in prison. *Id.*

On December 15, 2003, police officers attempted to serve outstanding warrants on Mr. Dilworth at his home. *Id.* at ¶¶ 5–9. The officers found Mr. Dilworth hiding in a closet with a loaded revolver and approximately 381 grams of marijuana, a scale, and plastic bags nearby. *Id.* at ¶¶ 6–8. He was arrested that day and eventually charged with the crimes that led to his convictions here. *Id.* at ¶¶ 1, 9.

When Mr. Dilworth was sentenced, any North Carolina conviction for breaking and entering was considered a felony under federal law. *See United States v. Harp*, 406 F.3d 242, 246–47 (4th Cir. 2005) (holding that courts must consider the maximum aggravated sentence that could be imposed for federal sentencing purposes); *see also* Doc. 24 at 10–11. At sentencing, the parties discussed Mr. Dilworth's 1996 felony breaking and entering conviction. Mr. Dilworth objected to career offender status to preserve the argument that the conviction was not a felony defined by federal law, while recognizing recent case law to the contrary. Doc. 24 at 2–3. He also asserted that even if his guidelines were appropriately calculated based on the career offender enhancement, that enhancement overstated the seriousness of his criminal history, since he broke into a garage, not the interior of a home, and he only stole a lawnmower worth around $100. *See id.* at 5–10. Defense counsel urged the Court to vary down to a sentence within the non-career-offender guideline range. *Id.* at 7.

The government maintained that career offender status was appropriate in view of Mr. Dilworth's "long-term criminal history." *Id.* at 13. But the prosecutor acknowledged

4

that the breaking-or-entering felony was "not the most egregious," and conceded that "I can't sit here and look at you straight in the face, though, and say 262 is totally reasonable." *Id.* at 15.

The parties also debated the § 3553(a) factors. Mr. Dilworth highlighted his troubled life circumstances. *Id.* at 5. The government emphasized his long, and at times violent, criminal history, as well as the nature of the instant offenses. *Id.* at 10–14.

The sentencing court[3] evaluated each of the § 3553(a) factors individually, finding none weighed in Mr. Dilworth's favor. *Id.* at 17. After considering the guidelines on an advisory basis,[4] and acknowledging the statutory maximum on the drug charge and the mandatory minimum consecutive sentence on the firearms charge, *id.* at 5; Doc. 60 at 24, the court sentenced Mr. Dilworth to a bottom-of-the-guidelines total sentence of 262 months imprisonment: 120 months for possession of a firearm by a felon followed by a consecutive sentence of 142 months for possession of a firearm in furtherance of a drug crime. Doc. 24 at 18. In determining the appropriate sentence, the court said:

> I may have my own sentencing ideas in certain cases, and using the Guidelines as advisory, that they have been formulated after substantial thought and input and revision through the years, that the Court of Appeals has said that in the vast majority of cases the Guidelines will provide a reasonable sentence. And I can't say that a sentence at the low end of this guideline range of 262 months is more reasonable or less reasonable than a sentence that would be authorized under the otherwise non-career offender guidelines reflected on page 20 of the presentence report. Therefore, I think that a reasonable sentence is, in this case, what the Sentencing Commission

---

[3] The sentencing judge has retired, and the case has been reassigned to the undersigned.

[4] Mr. Dilworth was sentenced on May 12, 2005, just a few months after a January 12, 2005, Supreme Court decision making the Sentencing Guidelines advisory. *See United States v. Booker*, 543 U.S. 220 (2005); *see also* Doc. 24 at 4.

5

Case 1:04-cr-00412-CCE Document 124 Filed 03/08/21 Page 5 of 16

> has calculated that a defendant similarly situated to Mr. Dilworth would be facing.
>
> And there are some violent offenses here. There is a history of violent offenses. There is a history of incarceration with that. And there is a history of consistent firearm possession.
>
> So, for that reason, Mr. Dilworth, I am going to impose a sentence on Count 1 in your case of 120 months, followed by a consecutive sentence on Count 3 of 142 months, for a total of 262 months.

*Id.*

Some six years later, the Fourth Circuit overruled *Harp*, *see United States v. Simmons*, 649 F.3d 237, 241 (4th Cir. 2011), and as a result Mr. Dilworth's 1996 conviction for breaking and entering is no longer considered a felony under federal law, as the government agrees. Doc. 115 at 13. Mr. Dilworth's offense level and guideline range were enhanced by his career offender status based in part on his then-felony conviction for breaking and entering. Doc. 60 at ¶ 72.[5] If he were sentenced today with the same record and convictions, he would only have one predicate felony and the career offender enhancement would not apply. Consequently, today he would face a guideline range of 137–156 months rather than the career-offender-driven range of 262–327 months. *Id.*

As of December 1, 2011, the North Carolina Justice Reinvestment Act increased the lowest possible maximum term of imprisonment for a felony conviction in North

---

[5] As mentioned *supra*, Mr. Dilworth's trial counsel objected to career offender status based on an argument that the breaking and entering was not a felony as defined by federal law, but he recognized that *Harp*, decided only days before, precluded that argument. Doc. 24 at 2–3. This was the basis for Mr. Dilworth's appeal, and the Fourth Circuit explicitly held in an unpublished opinion that he was correctly considered a career offender. Doc. 25 at 2–3.

Carolina, regardless of offense class or prior record level, to thirteen months. N.C. Gen. Stat. § 15A–1340.17(d), (e). For crimes committed after that date, all North Carolina felonies, including felony breaking and entering, *see* N.C. Gen. Stat. § 14-54, again qualify as predicate felonies for federal sentencing purposes. *See United States v. Barlow*, 811 F.3d 133, 137 (4th Cir. 2015).

Mr. Dilworth is now 45 years old. Doc. 60 at 2. He has been in custody since December 15, 2003, serving his 262-month sentence. *Id.* at p. 1, ¶¶ 5–9. Mr. Dilworth's projected release date is July 7, 2023. Doc. 104-13 at 1.

While in custody, he has developed multiple medical conditions, including obesity and hypertension. Doc. 116-1 at 82–83. According to the CDC, people who are obese have an increased risk of severe illness should they contract COVID-19, and people with hypertension "might" be at an increased risk of severe illness. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 3, 2021).

Bureau of Prisons medical records show that his hypertension was "controlled" in November 2019, Doc. 118-1 at 1, but it is unclear if his blood pressure has been checked regularly during the pandemic. *Id*. at 2–4. The records do show that he has various medical prescriptions adjusted and renewed as necessary. Doc. 116-1 at 93–98.

Mr. Dilworth's disciplinary record while in custody shows many years of belligerent behavior and an inability to conform to the rules. He has received sanctions for flouting directions multiple times, spitting on staff, damaging property, and at least one assault. *See generally* Doc. 104-12. But he has incurred only one disciplinary action

7

since he was diagnosed and prescribed medication for two mental health conditions, Doc. 105-4; Doc. 105-5, and he has not had any violations since July 2019. Doc. 104-12 at 1. He has taken full advantage of the educational and rehabilitative opportunities offered, completing some 200 courses over his 17 years in prison. *See generally* Doc. 104-13; Doc. 120-1; *see also* Doc. 120 at 5. If released, Mr. Dilworth plans to enter a reputable, long-term residential drug treatment program in Durham, subject to the physical and psychiatric evaluation required for admission. Doc. 119 at 1. The U.S. Probation Office determined that his plan was acceptable. *Id.*

Mr. Dilworth is currently housed at FCI Butner Medium I, Doc. 104 at 4, which was hit hard early by the COVID-19 virus. Over the last year, there have been nine inmate deaths and 158 inmate and 48 staff recoveries. *See COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Mar. 4, 2021). The BoP reports that no inmates and only three staff are presently positive, *id.*, but there is no evidence before the Court about the extent of ongoing testing for the virus at this facility.

## Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the defendant must satisfy the exhaustion requirement. *United States v. Alam*, 960 F.3d 831, 833 (6th

8

Cir. 2020). The defendant must then show that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission and that extraordinary and compelling reasons and the relevant § 3553(a) sentencing factors merit a reduction. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).

Mr. Dilworth receives medical care for his chronic conditions, which do not seriously interfere with his ability to provide self-care while incarcerated. And the mere existence of the pandemic is not, by itself, an extraordinary and compelling reason for a sentence reduction. *United States v. Raia*, 954 F.3d 594, 596–97 (3d Cir. 2020).

There is a consensus in the district courts that some medical conditions combined with a serious risk of contracting COVID-19 can constitute extraordinary and compelling reasons for a sentence reduction.[6] "[I]n considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, [district courts] have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility." *United States v. Kibble*, Crim. No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citing *United States v. Brady*, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases)). The CDC's list of risk factors for COVID-19 complications also informs the Court's evaluation. *United States v. Stuart*, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8,

---

[6] *See United States v. Williams*, No. 1:13-CR-370-4, 2020 WL 5097490, at *3 n.4. (M.D.N.C. Aug. 28, 2020).

9

2020); *Everett v. United States*, No. 4:16cr35, 2020 WL 5793428, at *3 (E.D. Va. Sept. 25, 2020).

Here, Mr. Dilworth's obesity and hypertension place him at risk of serious complications and illness should he contract the virus, which the government concedes. Doc. 115 at 12. But the virus does not appear to now be in significant circulation at FCI Butner Medium I, where Mr. Dilworth is housed, and the fact that there was a large outbreak there early in the pandemic does not give rise to a serious risk of severe illness now. Without "a major outbreak of COVID-19 at [his] facility," obesity and high blood pressure, "alone or combined," do not constitute extraordinary and compelling medical reasons. *See United States v. Savoy*, No. 1:08-CR-00272-3, 2020 WL 6733683, at *3 n.3 (M.D.N.C. Nov. 13, 2020) (collecting cases).

But there are other circumstances here. Specifically, Mr. Dilworth points to his efforts at rehabilitation and at sentencing disparities resulting from the Fourth Circuit's decision overruling *Harp*. *United States v. Simmons,* 649 F.3d 237 (4th Cir. 2011).

The Fourth Circuit has issued one published opinion on what may constitute extraordinary and compelling circumstances, holding that statutory changes to mandatory minimum sentences can appropriately be considered as part of the § 3582(c)(1)(A) mix. *McCoy*, 981 F.3d at 275. The contours of that decision are not yet defined, and there is no decision addressing whether changes in the case law that affect the way the guidelines

10

are calculated may also be considered.[7]  But the Fourth Circuit has held that such now-known-to-be-erroneous career offender enhancements must be reconsidered when a defendant is eligible for a sentence reduction under the crack-retroactivity provisions of § 404 of the First Step Act, *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020), and it seems likely that the Fourth Circuit would also hold that such errors could be taken into account as part of the calculus applied to a compassionate release motion, at least until the Sentencing Commission says otherwise.  Therefore, the Court will do so. *See Stuart*, 2020 WL 7232074 at *3 (considering the fact that one of the defendant's previous convictions would no longer support career offender enhancement as one of several factors supporting § 3582(c)(1)(A) sentence reduction).

Mr. Dilworth's guideline range was enhanced by his career offender status based on earlier felony convictions for child abuse and breaking and entering, Doc. 60 at ¶ 72, and as discussed, *supra*, his 1996 breaking and entering conviction is no longer a felony under federal law.  If sentenced without the career offender enhancement, his guideline range would be 137–156 months, rather than 262–327 months.  *Id*.  Since his December 2003 arrest, Mr. Dilworth has served some 207 months for the instant crimes, well longer than the guideline sentence without the career offender enhancement. And, as noted, even the government conceded at the original sentencing hearing that a guideline sentence might be too long.

---

[7] The only published appellate case on this topic the Court has located is *United States v. Fine*, 982 F.3d 1117 (8th Cir. 2020), which is not very clear.  It holds that a defendant's compassionate release motion challenging his career offender status should have been construed as an unauthorized successive motion to vacate, set aside, or correct a sentence.  *Id*. at 1118–19.

11

Another factor in support of a time-served sentence is Mr. Dilworth's extensive rehabilitation efforts. He has completed over 200 educational courses while incarcerated and is very likely to be accepted into a well-respected residential drug treatment program upon release. By statute, rehabilitation alone is an inappropriate basis for a finding of extraordinary and compelling circumstances, 28 U.S.C. § 994(t), but as *McCoy* makes clear, it is appropriate to consider along with other facts. 981 F.3d at 286 n.9.

Two more considerations warrant consideration. First, as noted, North Carolina has since revised the statutory penalties for breaking and entering, and if Mr. Dilworth were convicted of the same crime today, it would again be a felony for federal sentencing purposes. Thus, the sentencing disparities based on changes in federal case law were somewhat temporary in view of subsequent changes to state sentencing law.

Second, the sentencing judge specifically considered the nature of Mr. Dilworth's criminal record and refused to grant his request for a downward departure to a sentence within the non-career-offender guideline range. The sentencing judge had greater familiarity with the individual case and the individual defendant, *Gall v. United States*, 552 U.S. 38, 51 (2007), and a later assessment by another judge handling a compassionate release motion is appropriately informed by the original judge's reasoned and discretionary sentence,[8] which was lawful when it was imposed. *See Stuart*, 2020

---

[8] There is no published appellate case law discussing what, if any, deference or consideration should be given to the original sentencing decision. There is also no guidance from the Sentencing Commission. But it is clear that courts "should be wary of using the motion to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430

12

WL 7232074 at *3. That said, the sentencing judge was clear that the career-offender-enhanced guideline range drove the bus on Mr. Dilworth's sentence. Doc. 24 at 18 (noting that a sentence at the low end of the guideline range of 262 months was neither more nor less reasonable than a sentence without the career offender enhancement). He characterized the guideline range as presumptively reasonable,[9] and noted that it was important to treat similarly-situated defendants the same, finding that "a reasonable sentence is, in this case, what the Sentencing Commission has calculated that a defendant similarly situated to Mr. Dilworth would be facing." *Id*. As Mr. Dilworth points out, his sentence is significantly longer than someone in a similar situation would now receive.

Taken together, the Court finds that the risks to Mr. Dilworth from the COVID-19 pandemic, the changes in sentencing law, the length of the sentence he has already served, and his significant efforts at rehabilitation constitute extraordinary and compelling circumstances warranting a sentence reduction.

That leads to a consideration of the § 3553(a) factors. There is substantial overlap between the conditions constituting extraordinary and compelling circumstances and the § 3553(a) factors here, and taken as a whole, these factors also support release.

---

(S.D.N.Y. 2020); *accord*, *United States v. Ballenger*, No. CR16-5535RBL, 2020 WL 3488157, at *5 (W.D. Wa. June 26, 2020). Other circuits have acknowledged the need for a good record and explanation when a judge who was not the sentencing judge decides a compassionate release motion. *See*, *e.g*., *United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020).

[9] The Court appreciates that while this may be an appropriate way for an appellate court to review a within-guidelines sentence, it is not now an appropriate way for a sentencing court to consider the guideline range. *Gall*, 552 U.S. at 50.

The strongest factors against a sentence reduction are his serious criminal record and his disciplinary record in prison. He fractured his infant daughter's skull, Doc. 60 at ¶ 27, broke into a home and stole a lawn mower, *id.* at ¶ 28, and, after serving time in prison, he possessed a firearm and restrained a five-year-old child in an effort to avoid arrest. *Id.* at ¶ 32. After more prison time, he again possessed a firearm in the underlying offense, this time in furtherance of drug trafficking. And he has a very long record of disciplinary infractions while incarcerated. Doc. 104-12.

But Mr. Dilworth is 45 years old now, and the risk of recidivism is generally "inversely related to an inmate's age." *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014). He has expressed remorse for his actions, Doc. 104 at 13; Doc. 117-1, and after 17 years and over 200 educational courses, including the completion of every anti-recidivist training program available to him, Doc. 117 at 6; Doc. 120-1, it is hard to imagine what more he can do to advance his rehabilitation in the approximately two years left before his sentence expires. He will be on supervised release for three years, with conditions requiring drug testing and cooperative participation in substance abuse treatment and mental health treatment. Doc. 21 at 4. These conditions further reduce the risk to the community and make it likely that any criminal activity will be swiftly detected and an appropriate sanction entered.

The risk of recidivism can be further reduced, and protection of the public increased, by adding a requirement that Mr. Dilworth reside in a long-term residential substance abuse treatment program with a work component for at least two years. That is his plan, and if he can be successful in avoiding a return to drug use and in staying

14

employed, his risk of recidivism will drop substantially. That two-year period also comes close to coinciding with the end of his originally-imposed sentence.

His current mental health medication appears to be effective, as his disciplinary problems have ceased in the last eighteen months. This is particularly noteworthy since the last year has presented extremely trying incarceration conditions arising from the pandemic. And, as previously discussed, "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" is a factor that weighs in Mr. Dilworth's favor.[10]

There is little to be gained by keeping Mr. Dilworth in custody for another two-and-a-half years when he faces the possibility of severe illness if he is infected with a virus that claims scores of lives daily. He has served a very significant sentence already, with the last year raising many stressors because of the difficulties the BoP has had in reducing transmission of the virus in the prison setting. Weighing the § 3553(a) factors, Mr. Dilworth's risk of severe illness from COVID-19, his impressive catalog of educational courses while incarcerated, his age, the changes in the law relevant to his career offender status, and his release plan, the Court concludes in its discretion that a sentence reduction is appropriate.

It is **ORDERED AND ADJUDGED** that the defendant's motion for compassionate release, Doc. 104, is **GRANTED** and that Mr. Dilworth is sentenced to time served. Execution of this order is stayed for 21 days to give the Bureau of Prisons,

---

[10] This is not a strong factor, as the 2011 North Carolina sentencing changes make breaking and entering a felony under federal law once again. But it does weigh in Mr. Dilworth's favor.

15

Probation, and Mr. Dilworth time to finalize his release plan. The Clerk shall provide a copy of this order to the Bureau of Prisons and to Probation.

It is **FURTHER ORDERED** that as additional conditions of supervised release, the defendant shall reside for two years in a long-term residential treatment program such as TROSA, or other similar program approved by his probation officer, and he shall cooperatively comply with the rules of that program. He shall otherwise comply with the conditions of supervised release set forth in the original judgment

This the 8th day of March, 2021.

_____
UNITED STATES DISTRICT JUDGE